I'm appearing today on behalf of the Plaintiff Appellant, Cat and Dogma, LLC. This appeal raises two issues for the panel to address de novo under the plausibility standard under Rule 12b-6. First, the plaintiff respectfully asks the court to determine that C&D has set forth a plausible claim that its two-dimensional graphic artwork is sufficiently original to warrant copyright protection under Section 102a-5 of the Copyright Act. Second, the plaintiff also asks the court to determine that C&D has set forth a plausible claim that Target's allegedly infringing garments are substantially similar or even strikingly similar to C&D's registered graphic artwork. In dismissing the amended complaint Yes, Your Honor. I'm sure you know this area of law. That little or is very significant legally. If we were to conclude that the design arrangement only attained thin protection, it would have to be more than substantially similar. It would have to be, let's call it, super substantially similar, virtually identical. Is that the way the law goes if one distinguishes between thin and full protection? The defendant has argued that in their brief, that you have to – if you're only relying on the compilation selection and arrangement. So there is some case law to that effect. There's nothing that I've seen in the statute that certainly requires that. I think the distinction really between substantially similarity and striking similarity is that with substantial similarity, you have to show access, whereas with striking similarity, you don't. There is some enhanced – some case law to that effect. Is there binding circuit precedent to that effect? Well, I believe NOLA Spice does stand for the proposition. So we have to follow NOLA Spice, don't we? Yes, and we also – and the court respectfully also has to follow the Supreme Court's case in Feist as well as in Starr Athletica. So what do we do then with Judge Higginson's question if we have to follow NOLA Spice? Yes, so in this case, based on the facts that are on record, I think the court does have enough information to determine that there is an enhanced substantial similarity here. If we were to compare, just do a side-by-side comparison from a layperson's perspective, which is what is required by Fifth Circuit law, I think that we would find that we have here the phrase I love you, spelled in perfect English, there's no vernacular. It's lowercase. It is in cursive script. It is written three to five times horizontally. It's 25 times vertically. And most importantly, under the Supreme Court's precedent in Starr Athletica, it's in the shape of a nightgown or a jumpsuit-style garment. So if we were to extrapolate the two-dimensional graphic design and eliminate the border that's indicated by the nightgown, you would still essentially have a shape of a nightgown. So what my client is claiming copyright ownership to is the ability to reproduce that specific graphic design as described, not any other design. So, for example, if Target wants to make blankets using this exact same I love you lowercase script, we can't stop them because we don't own the copyright to the shape of a blanket. We own the copyright to the shape of a nightgown. So things like the shape and the number of rows, because you agree we do filter out the cursive font and the words. Yes. It's looking at what's left, really what we'll call the expression of it. Correct. But would you agree with me that this is pretty minimal expression? It's very realistic. It's not stylized or decorative, or would you dispute that? I would dispute that, Your Honor, because let's think for a second how many ways in which the idea of I love you can be expressed on a pajama garment. You could use the vernacular, L-U-V. You could use a heart-shaped symbol. You could use all capital letters. You could display it in an abstract manner rather than a linear manner. Those would be more stylized than decorative. So these are stylized, and so that's why we cite to the cases which say it's really the aesthetic appeal here. The defendant is relying on cases like Feist, which involve a telephone directory, which is a utilitarian. Fact compilation. It's a fact compilation. It's utilitarian. This is a pajama for children. It's purely aesthetic. I don't see either of you are disagreeing about Feist or Nola's Feist, really. The district court may have slightly seen things differently, but fundamentally, are you agreeing with them that this is a comparison of two expressions, just the arrangements? That is exactly right. And we're trying to decide. That's exactly right. And what we see is that the district court erred because the district court sort of conflated the analysis of originality and substantial similarity, which are two completely different prongs. But didn't Target have more rows, for example? No. Actually, if we were to analyze record evidence, 21, which is one of the nightgowns, is exactly 25 rows. Another one is 24 rows, but I think that there could be a little bit margin of error in terms of rows to prove substantial similarity. I would definitely say that at least three of the four garments that are identified in the appellant's brief are enhanced substantial similarity. One of the garments is not fully photographed. But, again, we have to remember, it's Rule 12. It's plausibility. We haven't had a chance to get into discovery yet. There would be the opportunity for the court or for the jury to determine, to look at the garments themselves, for example, and make a side-by-side comparison. Here we're really dealing with sort of a bare-bones, two-dimensional, side-by-side analysis. The district court's order, if evaluated carefully, it does not conduct a side-by-side analysis. What it essentially says is that there's no substantial similarity because the arrangement is trivial. So it sort of has bootstrapped the originality analysis into the substantial similarity analysis, and we think that there's a conflation there that requires reversal. You know, I think a good starting point, however, is the copyright registration itself, because the applicable registration, which is at Record 15, it says specifically it's for a 2-D artwork design. Okay, so we're not, you know, the defendant has made many sort of broad arguments that we're attempting to monopolize use of the term I love you on all consumer products. It's a way too broad argument. The argument is much more narrow than that. Again, it's cabined by the copyright registration and the deposit copy, which is at ROA 13, that's on record, which is in the shape of this nightgown garment. I'd like to cite to the Star Athletica case, which the defendant cites in their opposition brief, because this was a case involving cheerleader uniforms, and there were these sort of intricate, linear designs on the uniforms, and the Supreme Court said, well, in order to get copyrightability to these designs and curvatures on the uniforms, you had to extrapolate that design and take it outside of the quote-unquote useful article. And it said, this is a quote from the Supreme Court, it said, consider, for example, a design etched or painted on the surface of a qatar. If that entire design is imaginatively removed from the qatar's surface and placed in an album cover, it would still resemble the shape of a qatar. But the image on the cover does not replicate the qatar as a useful article. I'm going with you, but you're talking quickly. I guess, can I simplify the question to the following? If you were to suggest to us why we should reverse, simplest ground, is it that you can point to a stylized aspect of your pajama, or is it that you acknowledge it's pretty much just copying words, and yet the two are still virtually identical? Which is it? Which is the stronger analysis? I think the stronger analysis is the former. Because ultimately what I think a consumer, ordinary layperson, is purchasing here is an aesthetic, an art. It's not like a book cover. It's not as if this really has lots of moving pieces or hearts, you know, dolphins that are blurred. It's pretty realistic just copying words. So what's the most stylized feature of your product? Well, I think that the ‑‑ that's a good question, Your Honor. I mean, I think the idea of using common text, common phrased text, is a difficult question. And I think the fact that the Copyright Office registered this design is extremely telling. I agree. The originality and the statutory presumption, especially if Target didn't offer anything to rebut it, but I'm still trying to identify what element is decorative, fanciful, that would give you full protection. Well, again, I think it's the organization, the spacing of the letters is important. I think the fact, again, that the plaintiff chose to use I love you as opposed to, let's say, the heart symbol or to use L-U-V or maybe I love and just the letter U. It has a little I. Yeah, exactly, like the fact that it's lowercase. It could have been capitalized. Anything made in the district court about the lowercase I? Excuse me? Was any argument made in the district court about the lowercase I? Well, yes. The plaintiff did make the argument in the briefs as well as in the complaint itself, set forth these separate components saying that lowercase was a part of the aesthetic of the whole design. Because, look, Target could have seen our client's design, said, oh, we like that idea, putting I love you on a pajama garment, and they could have rendered it in a separate graphic and done it in a separate way, and we could not have stopped them. You at least intimated that if it had just been one I love you on the back of a T-shirt, you wouldn't be claiming… Exactly. …even lowercase? So what's the stylized feature that's… I think what the stylized feature, again, is the spacing. I think it's the spacing, the context, the linear manner in which it's displayed. The number of rows. The number of rows, the number, yeah, exactly, the number of rows. They could have spaced it. What matters about those things? Again, it's because the reason why it matters, Your Honor, is because we're dealing with a two-dimensional art design. It's art that we're dealing with here. We're not dealing with utility. We're dealing with a purely aesthetic appeal that consumers are going to want to buy a design that they're going to want to see their children with because it's cute, because it's appealing to them. It evokes emotion. It has nothing to do with, like, a telephone directory. It's purely a… I mean, it's tempting to say, well, this is, you know, it's I love you phrase. You know, it's so common. How could that be copyrighted? Again, it's all about visual. It really is a qualitative and subjective assessment, and I think what the district court did was it sort of fell in. I'm sorry. The record is undisputed that you were selling through Target before they began? Well, it's alleged. You know, unfortunately, the record is not well developed. I do have evidence that my client began selling this product in 2015. We actually have, like, screenshots. Unfortunately, it's not on the trial court record, but it is alleged in the complaint, and I believe that the court is under Rule 12b-6 and needs to credit those allegations. So, you know, my client didn't discover this until 2019 and then promptly sought counsel as a result, and she's reported to me that, again, this is a very small company. It's a single mother who began this company in 2015 to support herself and her young son. Most of the clothing design cases on thin versus full are at the district court level in the Ninth Circuit and the Second Circuit. Is there one you would point to as the most pervasive in your favor? Yeah, I think there's, yeah, actually there is a case that I cited in our brief. It is the case of Sadhu Singh, and this was an interesting case where the, both plaintiff and defendant had used a very common Indian word, ajit, A-J-I-T, and they use it in almost an identical stylized logo. And this was a Rule 12b-6 case where, this is the Eastern District of New York, where the court said, quote, while use of a particular form of extensively used lettering is not copyrightable, the arrangement of that lettering and the manner of presentation, including background, letter size, spacing, combined to give the product sufficient independent authorship to warrant copyright protection. That's 503-F-7. Thin or full, or it doesn't go into that? It didn't say thin or full, but what it did do was it was a Rule 12b-6, and it said that they've, I'm sorry, this is right. So they said that in that particular case that it was too close to call, and then it was a plausible claim for copyright infringement. And, again, that's all we really have to prove here. We don't have to prove substantial similarity yet. We only need to set forth a claim that it's plausible at this stage. I think that a reasonable jury, if this thing went to a jury, considering the, you know, the relative size of Target versus, you know, the plaintiff, and if the jury were to see that plaintiff did begin marketing this design before Target, I think we'd have a very strong shot at victory in this case. The jury should rule because. I'm sorry, Your Honor. You're not arguing that the jury would rule because one person's big and one person's small. I'm not saying that, but I'm saying that there would be some. There would not be an appropriate way for the reason for the jury to rule, would it be? No. Yes, I agree, Your Honor, but there could be. But that would come in because there is, in a sense, there is an underlying. They look alike. Right. The side-by-side comparison between the two. Mr. Weiner has a question. Yes, Your Honor. Does the record show whether your client brought this to Mr. Leibowitz's attention or vice versa? Did he bring it to their attention, or does the record show that? The record does not show. However, based on my own personal knowledge, I can attest to the court that the client found Mr. Leibowitz online after looking for other legal counsel and brought this case to our attention. We then have an in-house team that registers copyrights on behalf of the client. I actually recall this case when I was not counsel of record in this case because we have a lot of cases, but I do recall the registration and our director of copy registrations asked me what my opinion was, and I said give it a try. I said I know that common phraseology is not typically copyrighted. And, by the way, the Copyright Office does reject applications, particularly graphic artwork, when it embodies a common geometric design or a common phrase. So when the Copyright Office came back and registered it, we were all delighted. We said, okay, we think we have something here, and that's when we filed suit. Thank you. We have your argument, and you've saved time for a rebuttal. Thank you, Your Honor. Yes. Good morning, Your Honor, and may it please the Court. I think I'll start with the questions that Judge Higginson and Judge Elrod asked. What's the governing standard? What case kind of controls the outcome here? And I think we agree, Judge Higginson, the parties have said Nola Spice designs that analysis, sets the standard for how the Court can decide this case. But in Nola Spice it acknowledged that if you take the dog features out, you still have to ask about the expression. Correct. And so if you want to – He's saying here there are expressive features, the little eye, the spacing, the rose.  I agree that you can apply the thinness analysis and say even if there's some degree of creativity here, some stylistic elements, let's look at those particular elements side by side and see what's similar and what's different, because actually there's quite a substantial number of differences. And I've got them all in a list here.  So first, you look at the sleeves. The sleeves have a stylized stripe on them in the plaintiff's design. There's no additional stripe in Target's design. You look at the collars. The U-shaped collar in sort of a gray color in the plaintiff's design is different than a blue color in one of Target's designs. And Target's other products have a different shaped collar. One is a V and one is a more elongated collar. The district court didn't do any of this. Well, the district court said I'm applying Nola Spice designs, and it's not substantially similar. Right, it kind of got, it skipped originality. It was not what you asked the district court to rule on, and then it was kind of a squished version of them. So I'm just wondering, the district court didn't go through, though, and say these are different in these 12 ways. When we look at the complaint, you know, this is plausible. Right. So you can look at the picture side by side and say, could a jury find that they're substantially similar, and why isn't the answer yes, it's plausible? So let me address that right away. So you have to take the pleadings, but there are cases from this court and others that say you look at just the pleadings, you put them side by side, and you have to apply the same filtration, sort of set aside the unprotectable ideas, and just look at the level of protectable expression. Right, so we're taking the rose, we're taking the stylized I love you and the spacing and the rose and the little eye and all of that. Correct. And I agree with Your Honor, the district court's order could have been more elaborate or more detailed. How do you even deal with the rebuttable presumption of originality? Well, I think it said, looking at Feist, there isn't minimal creativity here. I don't think this court needs to address the creativity issue because under the thinness analysis, even if you say there's some degree of creativity here, the level of creativity is so minimal that the person who made the point you made, and you disclaimed in your response the motion, the reply to the response, the motion dismissed, you disclaimed that you were challenging the validity. Correct. And we're not saying we're not saying. And Judge Elrod's point is right. I mean, you should continue to tell us if there's any other salient feature besides the sleeves and the collars, but the district court didn't really do this. It didn't expressly say I am identifying the following nine differences. It said I'm applying NOLA spice. What's the third or fourth, just so I don't overdo it? Sure. So, okay, so if you look at the button features, right, so their design has this little stripe down the middle near the collar. None of targets have that. Some of them have different hook and loop features. Some of them have stripes on the shoulders that are not in the plaintiff's design. Then you look at the actual text. There's a whole bunch of differences in the text itself. The font color is different. Theirs is sort of a light greenish gray. Targets is black. If you look at the typeface, you know, they're not saying it's Garamond or Century School, but they're just saying it's cursive. But look at the actual letters. So targets, I has sort of an upward stroke to it. Theirs doesn't. Targets, the hook on the I is different. Where the letters in the word love are connected are different. Targets are near the top. You know, the O and the V connect near the top. Targets connect in the middle. If you look at the Garamond itself, you know, near the tag, their design has text, I love you, like in the inside of the Garamond. Targets doesn't have that. Were all these arguments made in the district court? So we identified the differences. I don't know that we specifically said here are the nine differences. This is here on de novo review, and we made the same. I'm just trying to figure out what was, because to me it doesn't look like this is what was being done by the district court. But go ahead. Sure. So we certainly said apply NOLA Spice Designs, filter out the unprotectable ideas. And there's really not much expression left. And if you sort of apply the same analysis that in the NOLA Spice Designs case, you know, right with the Mardi Gras bead dogs, you don't look at it just from a bead dog perspective at a high level of generality. You look at, well, are the eyes different? Are there one sphere versus two? How are the noses connected? What's the collar look like? What's the tail look like? Did you tell Judge Yackel even whether this is full or thin, or did the parties not really get to that inquiry in the law? I think we cited NOLA Spice Designs for the proposition that this isn't substantially similar. If you don't remember that, do you have familiarity with his EDNY case? Yeah, that's not a clothing case. That's a newspaper case. So that was essentially two different Punjabi Indian newspapers where they had the word Ajit and a logo and a masthead. And the court said, to some degree, some of it's protectable, some of it's not. Did the court reach the substantial similarity question in that case? I would need to check, and I have it here. I'm happy to. What's your best case? Same question I asked him. What's your best case to even set up the legal framework, which is to say if it is a valid copyright, at least presumptively, it only gets thin protection? What would you point us to? On the proposition of thinness, NOLA Spice gets there, and the engineering dynamics case from this court also addresses the concept of thinness or essentially a sliding scale where different works get different levels of protection. Okay, your best clothing case, then. You know, there aren't a lot of clothing cases out there. I will say the best clothing case is the Brehm case from the Tenth Circuit. Sorry, Blehm, B-L-E-H-M. That's the case where they look at the Penman stick figures, you know, with the stick figures having the peace sign and playing Frisbee. And they get to this level. They don't say, oh, it's just a stick figure, or the stick figure has four fingers, or the stick figure is catching the Frisbee. They say, well, look at the mouth. The mouth is curved upward in this way. I will say there's a footnote in that case that says we don't need to address whether it's thin or not because once you filter everything out, there's just not enough substantial similarity, whatever the level. Remind us how this works in this type of litigation. If this is plausible under 12b-6, will there be another round or does it go to the jury? Will you bring all these same nine points on summary judgment? You're correct, Your Honor, that if this goes past a Rule 12 stage, it would go to discovery. We could then conduct more discovery and address even more differences than are plain on the face of the pleadings or the face of the complaint, really. There may be other examples in the public domain. Obviously, if it goes to discovery, we'd have an independent creation defense. It's not going to be summary judgment proceedings. It's not this or jury. Correct, right. And there's a bunch of cases, including Nola Spice, where this court addresses it on summary judgment. But if you determine that you can't tell if it's substantially similar and it's plausible that it is, then maybe it should go beyond 12b. But I hear what you're saying, Your Honor. Let me try and persuade you why it shouldn't. And the question of is it substantially similar isn't just, like, as a layperson, are we looking at it? Does it look the same? You have to apply the sort of filtration comparison analysis. And, of course, the question of whether it's substantially similar is a question of law. Nola Spice says that. The creation McCain case says that. And so really the question about procedural stage just deals with, well, what are we looking at to decide whether we can issue this decision as a matter of law? Are we just looking at the pleadings or are we looking at the broader summary judgment record? And, of course, Target's view is you don't need any additional evidence. You don't need discovery. You can just decide this by putting them side by side, looking at Exhibit C and concluding that once you apply the right level of analysis, the right level of abstraction, you know, comparing the text, and we haven't even gotten into the number of rows, the average number of characters per line is different, the number of repetitions per line is different. So if you look at all of those things, there really isn't any substantial similarity of protectable expression. Of course they're similar at the level of they both say I love you and they both are on a garment, but those ideas are not protectable. The only thing that could be protectable is the expression, and the expression is different in the nine ways that I've listed so far. Do you have anything else, counsel? You know, if the court doesn't have any other questions, I'm happy to give you nine minutes back. Let me just conclude with one remark about why it's really important to look at it at the right level of generality or, in this case, specificity, because if you grant protection to even the phrase I love you in cursive on a product, on a piece of merchandise, that gives a monopoly to that phrase and that writing in cursive to a party in copyright. And obviously the purposes of copyright law are to encourage originality and creativity and expression, but also not to give any one party to litigation a monopoly over things that are rightly in the book. I don't think that they're arguing that they have a monopoly over the phrase I love you. Well, and I'm... On this particular pajama outfit, it has the same rows, and that would have only on that. I mean, they've narrowed it tremendously. Yeah, and I'm glad to hear that. I will point out that on Rule 12b-6, you look at the complaint, and their complaint points at two blankets, two bedsheets. Right, but they've specifically said, No, we're not doing blankets, and we're not doing... So y'all may not be as far apart as you think you are. Well, I'm glad to hear that they've abandoned that, and maybe they can confirm that in rebuttal. But even if you look at only... But I'm just saying it's not going to be... It's going to be an I love you baby outfit that has this exact... It's a much narrower thing than the parade of horribles that you've just presented. Right. I'm not meaning to parade a non-existent horrible, Your Honor. I'm just trying to point out that, you know, if you have a baby garment, it's reasonable that you might want to express I love you to the baby in some way on it, and we want to be very careful about the level of generality that we're applying that to. So if you're looking at cursive writing, let's look at the cursive writing. Let's see if the I's and the loves and the hooks and all that really is the same. In your comparison, just before you sit down, what is the biggest difference between the C&D design and your challenge design? What is the single biggest? I mean... Sort of virtually identical? Well, I don't think they're virtually identical. I know you don't, but what's the biggest design distinction? I mean, I think if you look at the stripes and the styles, so, like, the stripes on the sleeves and the stripes on the collar and the buttons, those are all different. Oh, thank you. So I'll just conclude. Target asked the court to affirm. Thank you. We have your argument. Mr. Freeman, you've saved time for rebuttal. Thank you, Your Honours. So plagiarism is an interesting phenomenon. I'm sure in our careers or whether studying in journalism, we've all seen instances of plagiarism at some point or another. The plagiarist never copies exactly verbatim. What the plagiarist does is it takes maybe 85%, 90% and then peppers in a little bit of their own words to sort of conceal the fact that they ripped it off. And I think that the details that the defense counsel has shared with the court, in my view, it only strengthens our case, because they really are... I mean, he really struggled to identify any major difference at all, and instead he reverted to talking about the garment. We're not here to talk about the garment. We're here to talk about the two-dimensional graphic layout. The shape is important, but the collar, whether or not there's a grace... Why is the garment important when you're only doing a baby outfit? Well, no, the shape of the garment is important, but what he was talking about was, like, the embroidery and the stitching on the actual garment itself. That, I don't believe, is at issue here. What is at issue here is the shape of the nightgown or jumpsuit-style garment itself. I guess I'm not understanding now. So your point is the real rip-off was the shape of the garment, less even the I love you and embroidery? No, what I'm saying is that the I love you and the cursive and the lower font and the rose and the 25 rows, that all has to be framed by something, and what it's framed by is the shape of a nightgown garment. So that's one aspect, that's one component. What makes it protectable is that you have to look at the shape of... If we were to take the letters I love you and we were to eliminate the border that you see on Record 13, like the border, you're still going to see sort of, like, the outline of a nightgown of some kind. And what we're saying is that that would be the comparison that we would submit to the court. I know it was during the pandemic, but did you actually have a hearing in front of Judge Yackel? We did not have a hearing, Your Honour. We did not have a hearing. So, you know, I think that the... You know, I'm happy to hear that the court has recognized that the district court's opinion tended to conflate two separate concepts, did not conduct a side-by-side analysis, which is required by Fifth Circuit law, did not look at the side-by-side analysis in terms of how would an ordinary layperson view it, which means to me if someone were to... If an ordinary consumer were in Target and were in the children's section... Do you agree with Judge Elrod's question then, though, that if you prevail and it goes back, the judge still will have the opportunity to do the correct legal analysis and comparison? That is correct, likely on summary judgment. So the parties would engage in discovery, probably 120 days. We would submit, you know, more evidence to show, number one, access, number two, that the design was put to market in 2015. We would also have the opportunity to inspect the garments themselves. The court would have the opportunity to do that analysis and would be able to apply the standard in the appropriate way. I just wanted to make a quick correction. When Your Honor asked me at the beginning what was my best case, I had said that it was a Rule 12b6 case, Sadu. That was actually a summary judgment case where the court determined, the Eastern District determined, that the question of substantial similarity should go to the jury. There's also another case that's cited in our brief, also from the Eastern District, involving, it's called Boneci, B-O-N-E-C-H-I. It's a very short decision. In that case, it involved a book cover which displayed a picture of the Empire State Building and the words New York in a stylized manner at the top of the book cover. And that was the Rule 12b6 case. And the court found in that case that even though New York was a common phrase, the way that it was laid out, the style, the formatting, the background, that the plaintiff in that case set forth a plausible claim for substantial similarity. So I believe we have two good cases. They're both from Eastern District, they're not from the Fifth Circuit, which do support our argument that using text at the very least, common phrase, common phraseology, using it in an innovative or distinctive arrangement, even if it's thin, it is subject to copyright protection. So we do think that the District Court erred by ruling as a matter of law without much explanation at all that the arrangement was quote-unquote trivial. And we also believe that the side-by-side analysis, if it were subjected to applicable law, we would find that it meets this sort of exacting standard of an enhanced substantial similarity and that the very minor details in the differences, for example, 24 versus 25 rows, that that doesn't really carry the day. I think at this point it is plausible that we have set forth a claim for infringement, and we respectfully request that the panel reverse the District Court's decision and remand for further proceedings. I thank you for the opportunity to appear today. Thank you very much, Your Honors. Thank you, Mr. Freeman. We have your argument. This case is submitted. We appreciate you both coming today for argument. Thank you.